Gilberto Gierbolini, Juez Ponente
TEXTO COMPLETO DE LA SENTENCIA
Mediante recurso de apelación, María A. Santana Flores (en adelante, Santana) nos pide la revocación de la Sentencia Sumaria emitida por el Tribunal de Primera Instancia, Sala Superior de San Juan, que desestimó la demanda por ella instada contra la Cooperativa de Ahorro y Crédito La Puertorriqueña (en adelante, la Cooperativa) y otros. La Sentencia fue emitida el 24 de mayo de 1996 y notificada el 5 de junio de 1996. Santana presentó su apelación el 5 de julio de 1996.
El 28 de agosto de 1996, este Tribunal emitió Resolución para requerirle a la parte apelada la presentación de su alegato. No obstante, la Cooperativa solicitó una prórroga que fue concedida y *822 finalmente presentó su alegato el 21 de octubre de 1996.
Posteriormente, el 5 de abril de 1997, fue requerida la elevación de los autos originales para una . mejor comprensión del procedimiento seguido en el foro de primera instancia. El expediente nos fue remitido el 19 de mayo de 1997.
Así las cosas, y tras analizar el recurso a la luz del derecho aplicable, decidimos CONFIRMAR la Sentencia Sumaria recurrida.
I
Santana, como socia de la Cooperativa, acudió a las oficinas de ésta en Río Piedras el 18 de agosto de 1992 y solicitó un préstamo de $15,000.00 con el propósito de saldar deudas. Véase, Apéndice, página 25. En dicha solicitud figuraban los nombres y demás información de dos deudores (fiadores) solidarios. Luis Acevedo, empleado de la Cooperativa, pre-cualificó a Santana para el préstamo y le recomendó un vendedor de automóviles ("dealer"), ya que ella expresó la necesidad de adquirir un vehículo.
Al día siguiente, Santana visitó a Marlin Motors, Inc., escogió un auto Oldsmobile del 1988 y suscribió un contrato de venta al por menor a plazos en el cual adquirió el automóvil por un precio total de $13,905.39. De éstos, la Cooperativa financiaría $8,085.00 al 13.70% de interés. La cantidad financiada sería pagada por Santana a la Cooperativa mediante 35 pagos mensuales de $275.15 y uno de $275.14. Véase, Apéndice, páginas 27 y 28. La Cooperativa estaría encargada de gestionar el traspaso de la licencia y tablilla del carro.
Según surge de la declaración jurada del gerente de la Cooperativa, Raúl Arambarry, Apéndice, página 39, el 28 de agosto de 1992 el Comité de Crédito de la Cooperativa condicionó la aprobación del préstamo personal dé $15,000.00 solicitado por Santana el 18 de agosto de 1992, a que ésta sometiera suficientes garantías hipotecarias.
Santana solicitó reconsideración de tal decisión mediante carta al Comité de Crédito, en la que explica que de no ser aprobado el préstamo de $15,000.00 tendría que cancelar el préstamo recién contraído para la compra de auto. Véase, Apéndice, páginas 29 y 30. De la misiva surge que Santana había solicitado el 18 de agosto la renovación de un préstamo personal anteriormente contraído.
Posteriormente, el 2 de septiembre de 1992, Santana informó al Comité de Crédito que su casa ya no tenía "equity" porque había sido refinanciada hacía tres años. Por ello, solicitó que le fuera otorgado el préstamo de $15,000.00 sin garantía hipotecaria. Véase, Solicitud de Préstamo, Apartado Número 4 (Experiencia), Apéndice, página 25 y Declaración Jurada del gerente, Apéndice, página 39.
El Comité de Crédito reiteró el 3 de septiembre de 1992 que no podría renovar el préstamo a Santana sin la prestación de garantías hipotecarias y lo notificó a la socia mediante llamada telefónica el 4 de septiembre, Apéndice, página 25.
Mientras tanto, Santana había tenido problemas con el vehículo comprado a Marlin Motors, Inc. y el 17 de septiembre de 1992 otorgó nuevo contrato con ese "dealer" para sustituir el Oldsmobile por un Buick con el mismo precio. Véase, Autos Originales, página 3, de la Demanda.
Según establece la declaración jurada de su gerente, la Cooperativa no fue notificada de dicho cambio hasta que recibió copia del nuevo contrato, Apéndice, página 40. No obstante, en la demanda posteriormente instada por Santana, ésta alegó que la Cooperativa participó del nuevo contrato. Véase, Autos Originales, página 3 de la Demanda. De todas formas, cuando la Cooperativa advino en conocimiento del cambio de vehículo, tuvo que iniciar nuevas gestiones en el Departamento de Transportación y Obras Públicas para obtener la tablilla y marbete del automóvil sustituto, lo cual trajo "dilación y confusión" en el trámite ante dicha agencia, Apéndice, página 40.
Santana recibió la libreta de pagos correspondientes a la compra del nuevo vehículo. Sin embargo, ésta dejó de efectuar los pagos mensuales desde diciembre de 1993, cuando hizo el pago atrasado correspondiente a octubre de 1993. (Cabe señalar que las mensualidades se extendían hasta *823 septiembre de 1995, ya que las partes habían pactado que el préstamo de auto sería pagado mediante 36 pagos mensuales desde 1992).
La Cooperativa recibió la licencia de vehículo de motor del Buick a principios de 1994. Así, para febrero de ese año, los documentos fueron puestos a la disposición de Santana en ocasión de una visita que ella realizara a las oficinas de la Cooperativa, pero la socia rehusó recibirlos "indicando que tenía prisa y que luego pasaría a recogerla", Apéndice, página 33.
Así las cosas, el 8 de marzo de 1994, Santana instó demanda por alegado incumplimiento de contrato y daños contra la Cooperativa, Manuel Díaz (Marlin Auto Sales) y compañías aseguradoras desconocidas. Santana alega que la Cooperativa "incumplió lo pactado" porque denegó otorgar el préstamo de $15,000.00 sin garantía hipotecaria, aunque había sido pre-cualificada para ello por el empleado Luis Acevedo; que ello le causó graves daños económicos porque no ha podido consolidar sus deudas como "le prometió" la Cooperativa y ahora tiene como carga económica adicional el pago del automóvil Buick; que la Cooperativa utilizó maquinaciones insidiosas, fraude, dolo y engaño para inducirla a contratar; que maneja un vehículo de motor sin la tablilla y marbete correspondiente, ya que ambos pertenecen al Oldsmobile y no al Buick; y que todo esto le causa "inmensa ansiedad cuando transita por las calles de Puerto Rico, y en particular cuando ve a la Policía." Santana reclama daños ascendentes a $100,000.00.
En cuanto a Marlin Motors, Santana le imputa haber vendido vehículos defectuosos y cerrado el negocio sin hacer las reparaciones necesarias a su auto, las cuales tuvo que sufragar ella a un costo de $785.00.
El 15 de marzo de 1994, la Cooperativa fue emplazada, más no los demás demandados.
La Cooperativa, el 24 de marzo de 1994, en vista de que todavía Santana no había procurado obtener la licencia del Buick, el exhortó mediante carta del gerente, a que pasara a recoger los documentos del auto a la brevedad posible. Véase, Apéndice, página 33.
En varias ocasiones la Cooperativa solicitó prórroga al tribunal para contestar la demanda, más no surge de los autos que haya presentado su contestación en momento alguno ni que la parte demandante hubiese solicitado anotación de rebeldía. Por el contrario, las partes procedieron con el descubrimiento de prueba y el tribunal fijó fecha para una vista en su fondo.
Precisamente, no fue hasta el día señalado para la vista, el 13 de diciembre de 1995, que Santana le pidió la tablilla y el marbete del automóvil a la Cooperativa. Allí mismo el gerente hizo la entrega. Véase, Apéndice, página 41. La Minuta de ese día refleja que la vista fue pospuesta para el 8 de marzo de 1996.
En esa fecha, las partes estuvieron reunidas en cámara con el Juez y acordaron que la Cooperativa presentaría una moción de sentencia sumaria en los próximos 20 días, la cual sería replicada por Santana en un término de 10 días. Véase, Autos Originales, Minuta del 8 de marzo de 1996. No surge del expediente la fecha en que fue notificada la Minuta.
La Cooperativa presentó su Moción Solicitando Sentencia Sumaria el 26 de abril de 1996. Véase, Apéndice, páginas 18-42. La proponente acompañó la moción con la prueba documental pertinente y necesaria. 
En su exposición de los hechos no controvertidos, la Cooperativa relató, entre otras cosas, que cuando Santana acudió a solicitar un préstamo para comprar un automóvil el empleado Luis Acevedo le mencionó el nombre de Marlin Motors, Inc., como uno de los "dealers" con los cuales la Cooperativa había hecho negocios de financiamiento. "No obstante, estaba sobre-entendido que la demandante podía comprar el vehículo con cualquier otro 'dealer' de su preferencia y así se le hizo saber," Apéndice, página 13. La Cooperativa afirmó ser una entidad jurídica desligada de Martin Motors, Inc. y que la relación entre ambas empresas es puramente comercial. La Cooperativa relató, además, que en la carta que Santana dirigió al Comité de Crédito para solicitar la reconsideración, ella dejó claro que estaba dispuesta a cancelar el préstamo relacionado con la compra de su auto de no ser *824 aprobada la solicitud del préstamo por $15,000.00.
La Cooperativa también expuso como hecho no controvertido que no tuvo conocimiento de las dificultades que experimentó Santana con el automóvil comprado y que fue notificada posteriormente del segundo contrato entre el "dealer" y Santana para cambiar el vehículo de ésta por otro y que, para entonces, ya había iniciado las gestiones para obtener la tablilla y marbete del primer vehículo.
Según fue recogido en la Moción, la demandante nunca acudió a las oficinas de la Cooperativa para recoger la tablilla y marbete, a pesar de que había sido notificada desde febrero de 1994 que ya estaban disponibles. Véase, Apéndice, página 15 y Exhibit de la Moción, Apéndice, página 33.
A partir de entonces, Santana tenía 10 días para presentar su réplica, los cuales vencían el 6 de mayo de 1996. En esa fecha, el tribunal de instancia emitió una Orden para concederle a la demandante 15 días más. Notificada la orden el 7 de mayo de 1996, el plazo de la prórroga decursó hasta el 22 de mayo de 1996 sin que Santana compareciera.
Así las cosas, el tribunal de instancia emitió Sentencia Sumaria el 24 de mayo de 1996, en la cual acogió la solicitud de la Cooperativa y desestimó la demanda con respecto a ésta, sin imposición de costas u honorarios. Véase, Apéndice, páginas 12-17.
Oportunamente, Santana presentó el recurso que nos ocupa e imputó error al tribunal de instancia al determinar que la Cooperativa no incurrió en incumplimiento de contrato ni en ningún acto negligente que causara los daños alegados; al determinar que Santana tenía conocimiento de que los préstamos eran aprobados por el Comité de Crédito de la Cooperativa y no por un empleado; y concluir que la demandante aceptó los $8,085.00 que le prestó para la compra del vehículo Oldsmobile. Un examen del derecho aplicable nos obliga a diferir.
II
En nuestro régimen civil es principio básico que los contratantes pueden establecer los pactos, cláusulas y condiciones que tengan por conveniente, siempre que no sean contrarios a las leyes, a la moral, ni al orden público. Una vez son convenidos, los pactos se cumplen y tienen fuerza de ley entre las partes ("pacta sunt servanda"), Artículo 1044 del Código Civil, 31 L.P.R.A. Sección 2994; Capó Caballero v. Ramos, 83 D.P.R. 650, 673 (1961); Municipio de Ponce v. Rosselló, 94 J.T.S. 112, página 72.
Por esa razón, el Código Civil establece en el Artículo 1208, 31 L.P.R.A. Sección 3373: "La validez y el cumplimiento de los contratos no pueden dejarse al arbitrio de uno de los contratantes." Puig Brutau considera que existe una obligación en la medida en que "el deudor u obligado no puede liberarse por su sola voluntad de ajustar su conducta a lo que el vínculo obligatorio le exige," Puig Brutau, José, Compendio de Derecho Civil, Vol. II, Ed. Bosch (1987), página 129.
En consonancia con el valor que nuestro ordenamiento otorga al vínculo obligacional, el Artículo 1054 del Código Civil, 31 L.P.R.A. Sección 3018, sujeta a aquellos que de alguna manera contravengan sus obligaciones, a la indemnización de los daños y perjuicios causados. Bajo dicho supuesto, todo incumplimiento da lugar a un resarcimiento, Constructora Bauza v. García López, 91 J.T.S. 99, página 9076.
No obstante, la regla del cumplimiento en forma específica es la que prevalece y el resarcimiento o indemnización de daños y perjuicios desempeña una función subsidiaria, Puig Brutau, supra, página 142.
En el caso de autos, Santana a pesar de que demandó por incumplimiento de contrato, no solicitó un cumplimiento específico sino que circunscribió el remedio a la concesión de una cuantía por daños. No obstante, ninguno de los dos remedios procede en el caso de autos, ya que no encontramos que la Cooperativa incurriera en incumplimiento del contrato.
El contrato suscrito por Santana, Marlin Motors y la Cooperativa establece claramente que el préstamo ascendía sólo a $8,085.00 y que tenía la finalidad de financiar la compra de un automóvil. *825 Véase Apéndice, páginas 27-28. La Cooperativa cumplió con su parte al facilitar el dinero a crédito y gestionar ante la agencia concernida el traspaso del vehículo y la obtención del marbete y tablilla. Aún después del cambio del vehículo original por otro, la Cooperativa mantuvo el préstamo y comenzó nuevamente el trámite relacionado al registro del nuevo auto.
Los daños alegados por Santana provendrían, en todo caso, de sus propias actuaciones, puesto que no acudió prontamente a las oficinas de la Cooperativa a recoger la tablilla y marbete del Buick, a pesar de que ésta los puso a su disposición cuando los obtuvo a principios de 1994. La ansiedad o desconcierto que supuestamente le causaba a Santana conducir un vehículo sin los documentos de registro necesarios fueron, pues, autoinfligidos y no atribuibles a un incumplimiento de la Cooperativa con sus obligaciones contractuales.
Si alguien incumplió con los términos del contrato, según surge del expediente, fue la propia demandante, ya que desde octubre de 1993 dejó de efectuar los pagos mensuales acordados de $275.15 y no obstante, mantuvo el automóvil en su posesión.
Los argumentos en cuanto a que Santana fuera inducida a error por el empleado de la Cooperativa que la atendió no nos persuaden. Santana es (o era) socia de la Cooperativa y anteriormente había solicitado préstamos personales y tenía conocimiento de que quien aprobaba los mismos era el Comité de Crédito de la Cooperativa y que, por ende, un empleado como Luis Acevedo sólo podía pre-cualificarla. La carta que dirigió Santana al Comité de Crédito titulada "RECONSIDERACION RENOVACION PRESTAMO" habla por sí sola, Apéndice, páginas 29-30.
Como es sabido, el error que vicia el consentimiento debe ser demostrado, pues la validez del contrato y del consentimiento se presumen, Capó Caballero v. Ramos, supra. Aun cuando existiera error, para que éste anule el negocio es preciso que sea un error excusable y no puede responder a la negligencia o culpa de quien lo invoca, Id. La prueba documental antes referida demuestra la inexistencia de error por parte de la demandante. Pero aún cuando entendiéramos que sí hubo tal error, el mismo no sería excusable porque el "desconocimiento" sobre quién aprueba los préstamos pudo haber sido evitado con mediana prudencia o diligencia por parte de Santana. Asimismo:
"[L]a preparación académica, condición social y económica, y relaciones y tipo de negocios en que se ocupa una persona son factores de particular significación al determinar la existencia de dolo que anule su consentimiento," Citibank v. Dependable Ins. Co., supra; Miranda Soto v. Mena Eró, 109 D.P.R. 473, 478 (1988). Si tomamos en consideración que en la deposición que le fue tomada a Santana, ésta declaró que es ejecutiva de cuentas para una compañía de seguros médicos y, además, que ella antes había solicitado un préstamo personal a la Cooperativa, resulta poco probable la teoría de que Santana fue inducida a error por el empleado que la pre-cualificó para el préstamo personal de $15,000.00.
La Cooperativa, dentro de su libertad de contratación, no estaba obligada a renovar un préstamo personal sin garantías hipotecarias cuando la solicitante no tenía el ingreso suficiente como para ello. El haber condicionado la aprobación del préstamo de esa forma no constituye incumplimiento de obligación alguna y responde a la prerrogativa de la entidad prestataria de exigir las garantías que estime necesarias.
La prueba documental que el tribunal de instancia tuvo ante sí sustenta la conclusión a la cual llegó mediante su Sentencia Sumaria. Santana no procuró controvertirla, a pesar de que la Regla 36.5 de Procedimiento Civil le impone ese deber a la parte promovida por una moción de sentencia sumaria:

"...Cuando se presente una moción solicitando que se dicte sentencia sumaria y se sostenga en la forma provista en esta Regla 36, la parte contraria no podrá descansar solamente en las aseveraciones o negaciones contenidas en sus alegaciones, sino que vendrá obligada a contestar en forma tan detallada y específica, como lo hubiere hecho la parte promovente, exponiendo aquellos hechos pertinentes a la controversia que demuestren que existe una controversia real que debe ser dilucidada en un juicio. De no hacerlo así, se dictará en su contra la sentencia sumaria, si procediere."

Una vez presentada la moción de sentencia sumaria, Santana tenía 10 días para replicar, según fue *826 dispuesto por el tribunal el 8 de marzo de 1996. Véase, la Minuta correspondiente en los Autos Originales. Al expirar dicho término, el tribunal de instancia emitió Orden el 6 de mayo de 1996 para conceder un término adicional de 15 días a la parte promovida para que expresara su posición en tomo a la Moción. Dicha prórroga transcurrió sin que Santana respondiera, por lo cual ésta descansó en las alegaciones de dolo que hizo en su demanda, en contravención a la Regla antes citada.
Como es sabido, para probar dolo hay que demostrar la falta intencional o mala fe de la persona a quien le es imputado, ya que la buena fe se presume, Citibank v. Dependable Ins. Co., 121 D.P.R. 503, 509; Canales v. Pan American, 112 D.P.R. 329, 339 (1988). Nada de esto fue demostrado por Santana, quien vino a presentar una Réplica cuando ya la Sentencia Sumaria había sido emitida.
En vista de que los hechos incontrovertidos y la prueba documental no apuntan hacia un incumplimiento de contrato o acción dolosa o negligente por parte de la Cooperativa y que, como cuestión de derecho, tampoco procede imponer responsabilidad a la parte demandada por los alegados daños, el tribunal de instancia actuó correctamente al desestimar la demanda en cuanto a la Cooperativa mediante el mecanismo de sentencia sumaria. Véase, Tello Rivera v. Eastern Airlines, 119 D.P.R. 83 (1987).
Finalmente, a la representación legal de la parte apelante le recordamos que este Tribunal considera sólo aquella pmeba que formó parte del expediente original en instancia, Regla 74 (B) del Reglamento del Tribunal de Circuito de Apelaciones, por lo cual no debió incluir el Apéndice 7 (páginas 11 a la 14 de la deposición tomada a Santana) cuando en los autos del tribunal de instancia sólo constaban las páginas 39 y 40 de esa deposición.
III
Por los fundamentos anteriormente expresados, este Tribunal CONFIRMA la Sentencia recurrida.
Lo acordó y manda el Tribunal y lo certifica la Secretaria General.
Aida Ileana Oquendo Graulau
Secretaria General
ESCOLIOS 98 DTA 35
1. Estos son: copia de la solicitud de préstamo, copia del contrato de venta del primer automóvil (Oldsmobile), copia del préstamo aprobado para la compra del auto, carta de reconsideración con respecto a la renovación del préstamo personal, segundo contrato de venta al por menor a plazo (Buick), carta del gerente de la Cooperativa a Santana referente a la licencia del vehículo, parte de la deposición tomada a Santana y copia del talonario del último pago recibido por la Cooperativa.
2. "Quedan sujetos a la indemnización de los daños y perjuicios causados, los que en el cumplimiento de sus obligaciones incurrieren en dolo, negligencia o morosidad, y los que de cualquier modo contravinieren al tenor de aquéllas." Artículo 1054, Código Civil, supra.